[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court as a limited contested dissolution of marriage. The plaintiff Alicia Drosos' maiden name was Penaflorida. She was married to Ioannis Drosos in Norwalk, Connecticut on April 28, 1988. The husband and wife have resided continuously in the State of Connecticut for at least a year prior to the commencement of this action. The marriage has broken down irretrievably as claimed by the parties. One minor child has been born to the parties since the date of the marriage, Jonathan M. Drosos who was born April 2, 1991. The State of Connecticut is contributing to the support and maintenance of the wife and the child. The court, on April 29, 1993, allowed the plaintiff to amend her complaint to add a second count of intolerable cruelty.
The defendant had previously, on January 7th in Pleading #110.00, filed a cross-complaint alleging the marriage had broken down irretrievably. Thereafter, the husband amended his cross-complaint to add a second count claiming that fraudulent conduct and fraudulent misrepresentation by the wife induced the husband to marry her, and that the marriage is void or voidable under the laws of the State of Connecticut. Thereafter, on April 5, 1993, the wife filed an amended answer to the husband's amended cross-complaint.
Issue having been joined by the pleadings, the case commenced to trial. The court heard several witnesses.
Mrs. Drosos testified she is aged 34 and was born in the Philippines. She has a high school education and she is a full-time mother. Prior to that, her work experience had been as a nanny/housekeeper with a family living in Westport. She is a citizen of the Philippines but may work in the United States based on a visa. The parties met each other and after a very short courtship, she was given an engagement ring in January or February of 1988. At the end of April of 1988 the parties married. The wife testified she did not marry her husband to get a green card. In the Summer of 1991 the wife obtained another green card, this CT Page 5717 time a permanent green card. The parties separated in December of 1992. At the time of the marriage the parties occupied an apartment in the residence of the husband at 19 Oxford Street, Norwalk, Connecticut. The husband owned that property and purchased it with his own funds prior to the marriage. During the early part of the marriage, the wife would work all day as a nanny and then proceed home and prepare dinner for her husband.
Thereafter, the parties relocated to 69 Soundview Avenue, Norwalk, Connecticut. The property was purchased entirely with the husband's funds and title is in his sole name. After the wife separated from the husband she moved to 130 Seaside Avenue where she is renting a room that is shared by her and her son and she is sharing a bath and a kitchen with other residents of the home.
The wife testified to a litany of problems during the course of the marriage and claimed that he was intolerably cruel to her. She set forth several incidents on the record concerning the alleged intolerable cruelty. It is clear to this court however, that since the dissolution of marriage action began, she voluntarily slept with him on four occasions and voluntarily had sex with him. This does not sound like a woman who found her mate to be intolerably cruel.
The Soundview property was purchased for $173,000.00. The Soundview property has a mortgage of $138,000.00 or $139,000.00. It was a house that he took down to the skeleton and rebuilt it. Except for the electrical and plumbing, the husband did everything. He did similar work at 19 Oxford Street concerning renovations and repairs.
The husband has never had health insurance and life insurance during the course of the marriage claiming that he could not afford it. The husband left school at age twelve. The husband is in the painting and small house repair business. It is clear to this court after seeing photographs of his work that he does wonderful painting and is very handy in renovations.
The husband's testimony was, in the last six months he had four jobs. The first job was for somebody named Benedetto and that he did work in exchange for a boat that was worth $500.00. He testified he did work for a Mr. Green in Stamford and he did a room and some repairs for $225.00. He did some work for a Greek person where he testified the name was something like Anastglo, where he was paid $220.00. He then touched-up an apartment for somebody who CT Page 5718 is renting it for approximately $325.00. That is his total work. The husband has testified that he really only has four good months for work per year.
Oxford Street is fully rented. The first floor brings $675.00, the second floor brings $700.00 and the third floor brings $575.00 each per month.
An assistant vice-president at People's Bank, Mr. Chavenello testified that on Exhibit 11, the total amount of deposits showed on husband's account in 1990 was $54,434.00. That for 1991 as shown on Exhibit 12 and 12a, $66,479.00 were the total deposits. Exhibit 13 and 14 showed for 1992 that there was $41,624.10 of total deposits.
A real estate expert, Mrs. Hiller, testified and indicated through Exhibit 16, that 69 Soundview Avenue was worth $190,000.00 as of January 28, 1993. Her opinion was that 19 Oxford Street was worth $210,000.00 as of January 28, 1993 as shown on Exhibit 17. The court finds those values to be fair values for the properties.
A state welfare person testified that the husband was in arrears $350.00 subject to credits for payments. The husband is ordered to pay the arrears to the State of Connecticut within 60 days.
Ms. Bonnie Monohan who is a Manager of Corporate Finance at Pepsico and a graduate of Smith College testified. She had previously worked at Banker's Trust and had an economic's degree from Smith and an advanced degree from the University of Chicago. She indicated she had reviewed the tax returns, the financial affidavits, the mortgage applications, the bank statements, the deposit slips, the contracts relating to his business and compared the items and looked at the income and assets. She felt that the income information on the mortgage application Exhibit 9a was given the highest weight. She felt he had somewhere between $55,000 and $80,000 of net income based on what she had reviewed.
The court generally relies heavily on tax returns of the parties. It is clear to the court in this situation that even though the tax return was professionally prepared, all the proper information was not given to the preparer. It is clear that the preparer was given none of the information concerning the wife's wages although they were substantial during the course of the marriage as it related to the total amount of income shown. The CT Page 5719 court finds that income tax returns do not provide a fair gauge of the husband's earnings.
What is clear to this court is that between the banker and the financial expert, that a truer picture is painted of this man's finances. It is always difficult when one is self-employed to determine what the earnings are. It is also clear to this court that in the last six months he has not done a lot of work. The court is not convinced that it is all due to lack of work out there. This man does such wonderful work that it is hard to believe that he has not consciously avoided finding more work. The court, accordingly, is making its award based on current earnings as well as what this court perceives to be the earning capacity of this man based on all of the factors given by the expert as well as what this court has observed concerning the assets obtained by this man as well as what the court perceives to be his lack of candor and honesty on many issues. One of the most significant is lying on his tax returns. This court had the advantage of viewing and assessing the demeanor, attitude and credibility of the husband as a witness. This court finds that the husband, through his own wrongful conduct, limited the financial evidence available to the court and therefore, cannot be heard to complain about the resulting calculation of this monetary award.
The court in entering these orders has taken into consideration all of the statutory criteria in 46b-82, the Alimony Statute; 46b-81, the Assignment of Property and Transfer of Title Statute; 46b-215, the Child Support Guidelines; 46b-56, the Child Support Statute; 46b-62, the Attorney's Fees Statute and all other relevant statutory criteria. In addition, the court has taken into consideration all of the pleadings in the case, the parties claims for relief, the financial affidavits of the parties and the arguments of counsel. The court enters the following orders:
1. A dissolution of marriage on the plaintiff wife's complaint on the grounds of irretrievable breakdown. The court finds that the wife has failed to sustain her burden of proof that the marriage had broken down on the grounds of intolerable cruelty. The court also finds that the husband has failed to sustain his burden of proof on his cross-claim that the marriage is void or voidable because of fraudulent contract or inducement. That burden is one of clear and convincing evidence and that has not been proven. CT Page 5720
2. The court will not address the custody and visitation issues since that was already put on the record as a stipulation.
3. The husband shall pay child support for the minor child in the amount of $250.00 per week through the Support Enforcement Division of the State of Connecticut. This amount is based on a deviation from the guidelines. The court finds that the husband has substantial earning capacity which would allow this court to deviate from the guidelines and enter an order more appropriate under the circumstances. The court specifically finds that it would be inequitable or inappropriate to follow the guidelines and deviates from the guidelines for the reason of the best interest of the child and potential earning capacity of the husband.
4. The wife has indicated that she intends to further her education and is seeking employment training. This is admirable, but not such that the husband should pay for. The court finds that she has substantial earning capacity doing the kinds of things that she did before as a housekeeper and as a nanny. In the event that she pursues her education, and/or needs child day care while she is working, the husband is to pay one-half of that day care cost for Jonathan for three years from the date of this decision.
5. The husband shall be responsible for any arrearage to the State of Connecticut for the support of the minor child and shall indemnify and hold the wife harmless on such arrearage.
6. The husband shall pay to the wife as alimony for four years from the date of this dissolution, the sum of $50.00 per week to be paid through the Support Enforcement Division of the State of Connecticut. This order is also based on earning capacity rather than actual earnings. The court has selected time-limited alimony since the court finds that there are valid reasons for awarding time-limited alimony. One of those sound reasons is the sound policy that such awards may provide an incentive for the spouse receiving support, to use diligence in procuring training or skills necessary to attain self-sufficiency or just go back to work as she deems appropriate. A time-limited alimony award may also be used in this case for rehabilitative purposes. Also, the court has taken into consideration in this time-limited alimony, the fact that it has ordered the husband to come up with a lump sum alimony payment. The court also finds that this time-limited alimony will be there to assist her in going back to work as the child is older.
7. The court finds that the property at 69 Soundview Road has CT Page 5721 a value of $190,000.00. There is a mortgage of $138,000.00 for a total net equity of $52,000.00. The court orders the husband to pay to the wife the sum of $26,000.00 as her share of that equity. The $26,000.00 may be paid by the husband to the wife within six months of the date of this dissolution without interest. The husband may also pay this $26,000.00 by paying (1) $12,000.00 within 30 days of the date of this decree; (2) $7,000.00 on July 1, 1994 and (3) $7,000.00 on July 1, of 1995. Payments 2 and 3 shall bear simple interest at the legal rate. If the husband shall fail to make any of the payments provided above, the house shall immediately be placed for sale and the property shall be sold forthwith. All other rights or claims of the wife in any of the real estate are terminated.
8. The husband shall be the sole owner of the vacant Florida property.
9. The husband shall be the sole owner of his inherited property in Greece.
10. The wife's claims for attorney's fees are denied since the court finds that the husband is not in a financial position to make a contribution towards the wife's attorney's fees.
11. The court is not addressing the personal property since the parties have stipulated on the record concerning disposition of their personal property.
12. The husband shall be the sole owner of the premises at 19 Oxford Street, Norwalk, Connecticut.
13. A contingent wage garnishment shall enter.
14. The order of this court is without prejudice to whatever lien interest the State of Connecticut may now have or in the future acquire in the property and/or assets of either the plaintiff wife or the defendant husband for unreimbursed public assistance pursuant to General Statutes 17-83e et. seq.
15. All of the debts of the wife as shown on her affidavit shall be her sole and exclusive debt. All of the debts of the husband as shown on his affidavit shall be his sole exclusive debt.
16. All other assets not addressed in this decision listed by CT Page 5722 the wife on her financial affidavit shall be her sole and exclusive property. All other assets not addressed in this decision listed by the husband on his financial affidavit shall be his sole and exclusive property.
17. The wife shall retain the Pontiac Grand Prix which she is driving free and clear of any claims of the husband.
18. All medical and dental expenses for the minor child shall be paid equally by the parties.
19. The 1987 Dodge Van shall be the sole and exclusive property of the husband.
20. For four years from the date of this decree, the parties shall exchange signed copies of their 1040 Tax Forms within 30 days of the filing.
21. All other claims for relief made by the parties not expressly addressed herein by this court, have been denied.
KARAZIN, J.